PADEN v. GOLDBAUM et al.

No. 19,400; September 4, 1894.

37 Pac. 759.

**Execution Against Husband.**—In an Action by a Wife to Recover for cattle alleged to be her separate property, but sold on execution by a judgment creditor of her husband, although the evidence shows that her husband returned the stock for taxation in his name, and had the use thereof for dairy purposes, and represented to the judgment creditor that he was owner thereof, if it appears that the stock was bought by the wife with money earned before marriage, and its increase was reserved as her property, a finding that the stock was in fact hers will not be disturbed.

**Trial—Findings.—Where the Sole Issue is the Truth of the allegations** of the answer, a finding "that the allegations of the separate defense contained in the answer of the defendant G. are untrue" is sufficient.

**Execution Against Husband—Levy on Wife's Property.—A Finding That the Allegations** in the answer are untrue is justified when the only allegations therein are that the plaintiff, by her conduct, held out her husband as the owner of her separate stock seized on execution against him, and that, on faith thereof, credit was given the husband, and such allegations are contradicted by evidence showing that the creditor ordered the sheriff to seize the property in question, and gave a bond indemnifying such sheriff against the claim of the wife, and had constructive notice of such claim by a previously recorded statement of her separate property, including the stock seized.

**Trial—Findings.—Where an Answer Contains Two Separate Defenses,** viz., a denial of the allegations of the complaint and a justification of the acts complained of, a finding for the plaintiff on the first defense renders a failure to find on the second immaterial.

**Execution—Bond of Indemnity to Sheriff.—Code of Civil Procedure,** section 689, as amended by Laws of 1891, page 20, provides that, if one claiming property seized on execution serves on the sheriff a sworn claim setting out his title and his right to possession, the sheriff need not keep the property, unless the execution plaintiff gives a bond of indemnity to him against such claim. Held, that proof of the service on the sheriff of such claim is admissible against the sheriff in an action by a claimant for the wrongful seizure of property, though it is not pleaded in the complaint, since the statute is for the benefit of the sheriff, and is matter of defense.[1]

---

[1] Cited and approved in Brenot v. Robinson, 108 Cal. 145, 41 Pac. 38, where it was said: "If the form of the demand did not comply with the section of the code, the defendant could traverse the allegation in his answer, and could also object to the proof when offered at the trial."

Cited and commented upon in Kellogg v. Burr, 126 Cal. 42, 58 Pac. 308, where the court said that if, as there held, "said section 689 is intended for the protection of the sheriff," upon the making of the claim "the sheriff is not bound to retain the property unless he is indemnified, and may release it without incurring a liability therefor to the plaintiff in attachment or execution."

Cited and criticised in Breard v. Lee, 192 Fed. 74, the court saying: "In fact, in Paden v. Goldbaum, supra, the question is left in doubt by failing to decide whether this statute would be any protection to the sheriff in an action such as the present." The action was one by the

**Execution Against Husband—Estoppel of Wife to Set Up Ownership.**—Where a husband pastures his wife's cattle in return for their use for dairy purposes, she reserving the increase, such use by the husband, accompanied by a representation on his part that they were his, cannot, in the absence of any such representation on her part, or any act tending to mislead one holding a judgment against her husband as to the ownership of the stock, estop the wife from setting up ownership to defeat an execution levied on the stock under such judgment.[1]

**Execution Against Husband.**—An Inventory of a Wife's Separate Property, filed with the recorder, is admissible in evidence, against a judgment creditor of her husband, in an action to recover her separate property seized by him on execution, though the husband's debt to him was contracted before such filing, if the levy of execution was made subsequent thereto.

**Evidence.**—The Account-books of a Judgment Creditor are original evidence to establish claims against the debtor, and should be introduced as part of the case, and it is proper to exclude them when offered in rebuttal.

**Execution—Exemptions.**—Evidence as to Indorsements on a Sheriff's Writ of execution, whereby part of the property seized thereunder was surrendered as exempt, was properly excluded on the ground that its ownership was not in issue.

**Execution Against Husband—Property of Wife.**—The Testimony of a Witness in regard to a conversation with the judgment creditor prior to the execution, wherein he offered to take a new note from the husband if the wife would sign it, was admissible to show that the creditor had knowledge that the property levied on was the property of the wife.

**Evidence—Value of Cattle.**—Where a Witness Testifies that he has been in the dairy business for seven years, and is familiar with the value of cattle for that business, his testimony as to the value

owner of property against a person who had directed the sheriff to levy on it, the plaintiff not being the judgment debtor.

Cited in Aber v. Twichell, 17 N. D. 233, 116 N. W. 97, among many cases named as construing in the several states laws similar in effect to section 6951, Revised Codes of North Dakota.

[1] Cited with approval in Basshore v. Parker, 146 Cal. 529, 80 Pac. 708, a case where, however, the judgment in execution of which the levy was made had been against the wife alone, while the property seized was community property. The court said: "As to the declarations of the wife made in the absence of and without the knowledge of her husband, those declarations, of course, cannot be held to raise an estoppel where his title to the community property is involved."

of the cattle in suit is admissible, although he has not seen them for a year previous to the execution.

**Pleading—Unverified Complaint.—Code of Civil Procedure, section 437,** provides that "where the complaint is not verified a general denial is sufficient." Held, that where an unverified complaint alleges the value of property converted and the answer is a general denial, the value is put in issue.

APPEAL from Superior Court, San Diego County; W. L. Pierce, Judge.

Action by Flora J. Paden against Simon Goldbaum and B. F. Hubbert for the conversion of livestock. Judgment for plaintiff and defendants appeal. Affirmed.

Aitken & Smith and Hunsaker, Goodrich & McCutcheon for appellants; Withington & Pearson and J. P. Pearson for respondent.

HAYNES, C.—In this action the plaintiff had judgment, and defendants appeal therefrom and from an order denying a new trial. The complaint alleged that on January 13, 1893, the plaintiff, the wife of Alfred Paden, was the owner of certain milch cows and other cattle, and of certain horses and other personal property; that defendants, knowing that it was her separate property, took possession, and converted it to their own use, under the false pretenses that it was the property of her husband, to her damage in the sum of $3,000. Hubbert justified, alleging that he was a constable, and took the property under a writ of execution issued upon a judgment in favor of his codefendant against Alfred Paden, whom he alleged was the owner. Goldbaum denied all the allegations of the complaint, and alleged the recovering of the judgment; that he was a merchant; that Alfred Paden conducted a dairy, milk and stock ranch, and used said stock as the owner; that during said time he extended credit to Alfred Paden, and that the plaintiff, by her acts and conduct, represented the fact to be that her husband was the owner, and permitted him to represent himself to be the owner, of the property in question; that the conduct of both was such as to imply and cause defendant to believe that Alfred Paden was the owner; that he gave credit because thereof; that he had

no knowledge of any claim of ownership by plaintiff, and in giving credit relied upon said acts, conduct, representations and declarations of the plaintiff; and that he would be injured by allowing the truth thereof to be disproved by plaintiff. Findings were for the plaintiff, upon which judgment was entered against both defendants for the sum of $1,160.

The finding that plaintiff was the owner of the property is attacked. The evidence tends to show that the husband was the owner of about two hundred acres of land; that his wife was the owner of the stock; that under an arrangement between them the husband had the use of the stock for conducting the milk business, the wife to have the increase of the stock. There seems to be no doubt that the husband used and spoke of the property as his own, and sold and bought and traded portions of it with the consent of his wife, and returned the property for taxation in his own name. It does not appear, however, that she ever spoke of the property as his, while it does appear that there were rumors in the neighborhood that the stock belonged to her. That her money earned by her before her marriage was invested in stock, and that she was in fact the owner of the stock in question, is, I think, justified by the weight of the evidence; but, if it were doubtful, the conflict is such as to prevent the appellate court from disturbing the finding.

The plaintiff offered in evidence an inventory of property claimed therein to be her separate property, dated April 20, 1891, and filed with the recorder May 7, 1891, which included part of the property in question; the remainder, as plaintiff claimed, being the increase of the stock therein mentioned, or other stock replacing that which had been sold or exchanged. This inventory was received in evidence over defendants' objection. Defendants contend that the statute makes such inventory notice and prima facie evidence of the title of the wife, but only from the date of filing, while the indebtedness of the husband to Goldbaum was contracted in 1888, and that it was therefore inadmissible to prove notice and title at the time the debt was created. Very true; but it was admissible to prove notice of her claim at the time of the levy of the execution, to the extent, at least, that the stock therein described was seized under the execution. If defendant Goldbaum's plea of estoppel had been sustained, it might be that

the evidence would not benefit the plaintiff, but that did not affect its admissibility.

As to defendant Goldbaum's answer, the court found "that the allegations of the separate defense contained in the answer of defendant Simon Goldbaum are untrue." This finding is said to be insufficient, and that it is not supported by the evidence. As to the sufficiency of this finding, counsel cite Goodnow v. Griswold, 68 Cal. 603, 9 Pac. 837. In that case the court found specifically several facts, and then made the following finding: "The court finds that the several allegations of said complaint not in conflict with the foregoing findings are true." But what allegations were or were not in conflict with the findings made were not specified by the trial court, and that question the appellate court held it was not called upon to determine. The sufficiency of the finding here made is sustained by Johnson v. Klein, 70 Cal. 186, 11 Pac. 606; Moore v. Waterworks, 68 Cal. 146, 8 Pac. 816; Williams v. Hall, 79 Cal. 606, 21 Pac. 965. The new matter in the answer was deemed denied, and, as no new matter was or could be pleaded thereto, the sole issue was as to the truth of the averments of the answer and that was determined by the finding. Whether that finding is justified by the evidence will be considered hereafter.

It is also assigned for error that the court failed to find upon defendant Hubbert's answer. This answer contained two defenses; the first consisting wholly of denials of the allegations of plaintiff's complaint, and the second a justification under the writ of execution. The findings cover the issues raised by the first defense, and, those issues having been found for the plaintiff, a finding that defendant Hubbert had a writ and took the property under it would not have affected the conclusion of law that plaintiff was entitled to judgment. A finding thereon was therefore immaterial, unless counsel are correct in the construction given by them to section 689 of the Code of Civil Procedure, as amended in 1891 (Laws 1891, p. 20), a question we shall now consider. Section 689 of the Code of Civil Procedure, prior to the amendment, provided for a sheriff's jury to try the claim of a third person to property levied upon by the officer. That section, as amended, is as follows: "689. If the property levied on be claimed by a third person as his property by a

written claim verified by the oath of said claimant, setting
out his title thereto, his right to the possession thereof, and
stating the grounds of such title, and served upon the sheriff,
the sheriff is not bound to keep the property unless the plain-
tiff, or the person in whose favor the writ of execution runs,
on demand, indemnify the sheriff against such claim by an
undertaking by at least two good and sufficient sureties; and
no claim to such property is valid against the sheriff, or shall
be received, or be notice of any rights, unless made as above
provided.'' Upon the trial, plaintiff was permitted, over the
objection of defendants, to prove the service of a written
claim—in all respects conforming to the above provision—
upon the constable prior to the sale of the property, the ob-
jection being made upon the specific ground that the complaint
did not allege service of such claim. The argument is that
under this statute there can be no recovery against the officer
unless such claim is served; that it cannot be given in evi-
dence unless it is pleaded; and that, therefore, the justification
set up in the answer is a good defense, notwithstanding plain-
tiff's ownership, and therefore a finding of the facts con-
stituting a justification would sustain a judgment in favor of
the officer, and was material, and should have been made.

The first question here presented is one of pleading. In
statutory actions a compliance with all the provisions con-
ferring the right must be alleged: People v. Jackson, 24 Cal.
630. This, however, is not a statutory action, but one which
existed at common law. The former statute, as well as the
amendment, was intended for the protection of the officer, and
is therefore matter of defense. It is an exception to a gen-
eral right which need not be alleged in the complaint: 1
Chitty's Pleading, *p. 247. If the plaintiff had omitted to
make the verified claim required by the amendment, the
omission, if it could operate as a protection to the officer in
this form of action, should in such case be alleged in the an-
swer. The making or omitting to make the verified claim does
not affect the ownership of the plaintiff, but, if not made,
excepts the officer from liability in certain actions, and is mat-
ter of defense. ''Wherever there is a circumstance, the omis-
sion of which is to defeat the plaintiff's right of action, prima
facie well founded, whether called by the name of a 'proviso'
or a 'condition subsequent,' it must, in its nature, be a matter

of defense, and ought to be shown in pleading by the opposite party'': 1 Chitty's Pleading, *p. 246. The case of Himmelmann v. Danos, 35 Cal. 447, cited by appellants, is not applicable here. That was an action to enforce a lien upon a lot for macadamizing a street, and the complaint did not allege the proceeding required by the statute. The case of Barry v. McGrade, 14 Minn. 163 (Gil. 126), cited by appellants, sustains their contention, although the question of pleading is not discussed. The statute there considered was similar to ours, and it was held that the plaintiff must prove the service of the affidavit of claim in order to maintain the action. If it is necessary to be proved by the plaintiff in chief, so as to prevent a nonsuit, it must be alleged in the complaint. We cannot, however, assent to the reasoning or the conclusion of the court in that case. In the absence of the statute, the right of the plaintiff depends solely upon ownership; and it must be apparent that if the plaintiff, being in fact the owner, cannot recover, it must be because the statute exempts the defendant from liability, and not because it controverts the fact of ownership. It could no more be necessary for the plaintiff to anticipate a claim on the part of the officer that he was not liable because a verified claim was not served than to anticipate the plea of estoppel by Goldbaum by alleging facts inconsistent with that defense. It is entirely analogous to pleading the statute of frauds or the statute of limitations, which must be taken by answer, unless the defense appears on the face of the complaint, when it may be reached by demurrer. If the verified claim had not been offered in evidence by the plaintiff, the omission would not have availed the defendant Hubbert, since he had not alleged that a verified claim was not served. The result was that the plaintiff disproved a defense not made—a circumstance which could not prejudice the defendant. Whether the failure of a plaintiff to serve such verified claim would be a defense to an action for damages for the conversion of the property, or only to an action in claim and delivery to recover possession of the property from the officer (a question discussed by counsel), need not be considered here, in view of the conclusion reached upon the question of pleading.

It is also contended that the second finding is not justified by the evidence, in that there is no evidence that defendant

Goldbaum took possession of the property, or directed or aided anyone to take possession, or that he disposed of it. The officer took the property under a written direction from Goldbaum's attorney, of which the following is a copy: "You are instructed to levy upon all the horned and neat cattle, horses and other personal property (excepting household furniture) of the defendant, whether said cattle and property be at defendant's place of business, at Oceanside, or at his farm, at San Luis Rey; and you are.instructed to have all milch cows regularly and properly milked while in your possession, prior to sale." It does not appear that there was any other property of that description at either of the places mentioned than that levied upon, and all of it, Goldbaum testified, he believed to be owned by Mr. Paden, and the attorney who gave the instruction testified, in substance, that, before he gave the instruction, Mr. Paden told him it was his property; and hence there is no question that the instruction was intended to cover the property in controversy, and required the officer to levy upon it. Not only so, but the constable required from Goldbaum a bond of indemnity, and this was given. Independently of the rumor which Goldbaum says he heard, about the time he commenced his suit against Mr. Paden, that this property belonged to the wife, he had also at least constructive notice of her recorded claim, and following this came the demand from the officer for a bond of indemnity. Whether this demand was accompanied by notice of plaintiff's verified claim does not clearly appear. But it was after the seizure and before the sale. An indemnity bond had been previously given, but whether before or after the seizure does not appear. The additional bond was given, and operated as a ratification of the taking, and was in effect a request, if not a direction, to sell notwithstanding the plaintiff's claim, since, under section 689 of the Code of Civil Procedure, as amended in 1891, the officer "is not bound to keep the property unless the plaintiff . . . . on demand, indemnify the sheriff against such claim by an undertaking," etc. Whether upon receiving the bond, the officer is bound to keep possession and sell, it is not necessary to consider. The finding in question is justified by the evidence.

It is also urged by appellants that, if the finding against defendant Goldbaum's plea of estoppel is sufficient, such find-

ing is not justified by the evidence. Mrs. Paden testified that the arrangement between herself and husband was that he pastured the stock for the use of the cattle, and she had the increase. This contract she had a right to make, and the use of the stock under it by the husband could not of itself create an estoppel against his wife. The objection here urged necessarily concedes that she is the owner; and no one else, the arrangement itself being lawful, reasonable and proper, could, by word or act, create an estoppel against her. So far as the estoppel pleaded relates to the time when the indebtedness which was finally merged in the judgment was created, there was no evidence which tended to support the plea. Mr. Goldbaum testified that at the time credit was given ''he [Paden] was running a dairy there, and had cattle and land,' and I thought he was good. He was running it in his own name. Mrs. Paden was living with him at the time as his wife. She got some of those groceries from me. . . . . Mrs. Paden never notified me that she owned any of the cows during the running of this bill, nor that she owned this business, or owned any of the stock.'' He did not testify to any act or statement done or made by Mrs. Paden which misled him, or that she was at any time called upon to assert her ownership, and was silent, or that she intentionally or deliberately led him to believe that her husband was the owner of the stock, or to act on such belief. Section 1962, subdivision 3 of the Code of Civil Procedure, provides: ''Whenever a party has, by his own declaration, act or omission, intentionally or deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission, be permitted to falsify it.'' We find no evidence upon which a finding in favor of the defendant upon his plea of estoppel could be sustained, whether it relates to the period when credit was given or the time when the execution was levied. That the husband generally spoke of the property as his is doubtless true, but it does not appear that he ever spoke so of it when the question of ownership was discussed, or otherwise than casually in connection with the dairy business he was conducting. But if he had asserted his ownership when that was a material question, unless it was with the knowledge of the wife, and the defendant was misled by her silence when she was called upon to assert her

ownership, her title to the property would not be affected. There would be little protection given the wife in respect to her separate property, if, upon the facts of this case, it could be taken to satisfy the husband's debt. There is nothing in Barnhart v. Fulkerth, 90 Cal. 159, 27 Pac. 71, inconsistent with our conclusion, nor is it necessary to comment upon the cases cited from other states, since, if they laid down a different rule from that prescribed by the code, they could not be authority here.

Defendants called a witness in rebuttal, and asked him whether he had any conversation with Mr. Paden since January 11th, about a visit paid to the Padens that day. The court, of its own motion, interposed, saying, "We cannot have this sort of testimony for the purpose of convicting Mr. Paden upon an immaterial point." Counsel thereupon offered to prove by the witness Hayes and by defendant Hubbert that, a few days after the eleventh day of January, Mr. Paden said to the witnesses named that he (the counsel) "had been at their house, and as he expressed it, was doing some detective work, and he had acknowledged to me at the time the cattle were his." Counsel for plaintiff did not object to the offer, but the court ruled that it was not competent evidence, saying to counsel for the plaintiff, "If you are willing that it should go in, I do not know that I ought to say it should not, but it would take another day to finish the case, and I will not admit it." The conversation referred to was given in the testimony of counsel, during the examination of defendants' witnesses in chief, to the effect that Mr. Paden, in a conversation with the witness before the execution was issued—the plaintiff being present—said he was running the dairy; that witness asked him whose cattle they were, and "he said they were his cattle."

In rebuttal, Mr. Paden gave a different account of the conversation. Counsel, at the time of this conversation, was at Paden's house on other business. Mrs. Paden was at work making butter, and took no part in the conversation. Nothing was said in regard to Goldbaum's claim or of any effort to collect it. The inquiry was apparently without motive, and did not call for any remark by Mrs. Paden. That she should remain silent was natural. Under the circumstances, she was not affected by the statement of her husband, conceding it to have been as testified to by defendants' counsel;

and, if so, the proposed evidence was immaterial, unless for the purpose of impeaching Mr. Paden's testimony in chief, so far as it tended to prove Mrs. Paden's ownership, by showing that he had made statements inconsistent with his testimony. The evidence being immaterial for any other purpose, all testimony tending to show such contradictory statements should have been given by the defendants in chief, and no part of it could be reserved to rebut plaintiff's rebuttal. The defendant can only rebut new matter brought out in plaintiff's rebuttal, unless the court, in its discretion, permits it. Under these circumstances the exception will not avail appellants.

We think the court did not err in excluding Goldbaum's account books, offered by defendants in rebuttal. They were original evidence, and should have been introduced by defendants as part of their case. But, as defendants were allowed, without objection, to give oral evidence of the accounts, a liberal ruling would have permitted their introduction after plaintiff, in rebuttal, disputed the oral testimony. Defendants were not prejudiced, however, as the object of the evidence was to show that credit was given for merchandise because of Mr. Paden's supposed ownership—a defense that was not sustained by the evidence.

The evidence offered to be shown by Edward J. Martin was properly excluded. What the attorney who drew up the declaration of separate property for Mrs. Paden said about it in her absence was clearly inadmissible, while the fact that it was necessary to go to Mrs. Paden before he could get title to the property would not have benefited defendants.

The indorsements on the constable's return, showing that certain of the property seized was claimed by Mr. Paden to be exempt from execution, and was surrendered to him, was properly excluded. That property was not in litigation, and it was immaterial to whom it belonged.

The testimony of Joseph Jones, a witness for plaintiff, to a conversation with defendant Goldbaum in October preceding the levy of the execution, was properly received. We have held that the instruction to the constable required him to levy upon the property here in question, so that the objection that Goldbaum had nothing to do with the levy is not tenable, while the answer of the witness shows that at that date Goldbaum knew that Mrs. Paden owned or claimed to own the

property, and had offered to Paden to take a new note for half of the amount if Mrs. Paden would also sign it. This also disposes of the objection to a similar question put to William H. Libby.

The witness Olds testified that he had been in the dairy business for the last seven years, and was familiar with the values of cattle for dairy purposes; that he had seen these cattle two or three times, the last time being about one year before the trial. This was sufficient to qualify him to testify as to value. It is true he did not see the cattle at the time they were taken, and could not know their condition at that time, but if their condition had changed it was competent for defendants to have shown that fact. His testimony was not so satisfactory, for that reason, nor perhaps entitled to as much weight, as if he had seen them at the time of their conversion, but that was not sufficient to require its exclusion. But it was further objected that there was no issue as to the value. The complaint alleged the property converted to be of the value of $2,000. If no issue was taken upon this allegation, the defendants are not injured by the finding of damages at $1,186. But the complaint was not verified, and each of the defendants denied "each and every, and all and singular, the allegations of the complaint"; and this put in issue the value of the property converted, under section 437 of the Code of Civil Procedure, which provides, "If the complaint be not verified a general denial is sufficient," and puts in issue every material allegation of the complaint.

Appellants, on their motion for new trial, specified fifty-eight errors of law occurring on the trial. We have noticed only such of them as counsel have mentioned in their brief; but we have carefully read the entire record, and find no error justifying a reversal, and advise that the judgment and order appealed from be affirmed.

We concur: Belcher, C.; Searls, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.